

# Systrends USA

January 9, 2023

Dear Judge Lanza,

I am writing to provide a character reference for Thomas Gallaway who has been a valued member of our team for the past 9 months. I have had the pleasure of working with him in the capacity of his employer and can attest to his excellent character and work ethic.

Thomas Gallaway has consistently demonstrated his dedication and commitment to excellence. He is a team player and is always willing to lend a helping hand to colleagues, regardless of the task at hand.

In terms of job performance, Thomas Gallaway consistently meets and exceeds all expectations. He is highly skilled in managing our complex server environment and is able to handle a high volume of work with efficiency and accuracy. His attention to detail and ability to troubleshoot problems has been instrumental in ensuring the success of various projects.

In addition to his professional skills, Thomas Gallaway is a kind and compassionate individual who has a positive impact on those around him. He is highly respected by his colleagues and is a valuable member of our team.

I am aware of his criminal convictions and decided to give him a second chance by employing him. What I've learned from my life's journey and working as a leader of people in my company for over 35 years is that each of us has the capacity to help lift up another person, whether that involves opening your home, expanding your workforce, talking to family and friends about how everyone deserves a second chance or simply giving your time to a worth charity or cause.

There is no doubt I have made my share of mistakes and I have learned much from making them. However, there is a great difference between making mistakes and learning from mistakes. I feel that in order to truly learn from a mistake and show the world that a change has been made, one must be given a second chance to do so.

Judge Lanza, please give Thomas a second chance and the opportunity to learn from his mistake. And feel free to call me or write me any time for more information or for confirmation of this email.

Sincerely,
Dave Darnell
CEO/CISO/Founder
CISA CISM CISSP BSIE MBA PE
https://www.systrends.com/
Direct: 480.676.4451
Mobile: 602.432.3353
Fax: 480.447.7105
email: david.darnell@systrends.com
LinkedIn: https://www.linkedin.com/in/dave-darnell-53110


# Systrends USA

## Contracting Agreement

1. PARTIES TO AGREEMENT. This Agreement is effective March 21, 2022, between Phoenix Electronic Business Solutions, L.L.C., dba Systrends USA. (herein, the "Company") and Thomas Gallaway_(herein the "Contractor"). In consideration of mutual promises contained herein and other good and valuable considerations it is agreed as follows.

2. DEFINITION OF "CUSTOMER." A "Customer" is defined as any person, persons, or entity made known to the Contractor in the execution of this agreement, which has purchased from or engaged the Company to provide hardware, software, and/or consulting or contract services. This includes any person, persons, or entity, which has received a proposal, bid, or offer from the Company and has not rejected that proposal, bid, or offer.

3. TERM. The term of this Agreement commences on the first day that the Contractor performs the duties described herein for the Company, and continues until either party terminates this agreement as provided herein.

4. TERMINATION OF AGREEMENT. The Company may terminate this Agreement, and the Contractor's employment with the Company at any time, with or without cause, reason, or advance notice. Similarly, the Contractor may terminate this Agreement with the Company at any time, with or without cause or reason, by giving at least one (1) week's advance written notice to the Company. This is known as employment "at will." This Agreement also may be terminated at any time by mutual agreement of the Company and the Contractor. The Contractor has been provided with a copy of the Company's Code of Conduct, and acknowledges that Contractor's employment may be immediately terminated if Contractor breaches the terms of the Code of Conduct.

5. NONDISCLOSURE/CONFIDENTIALITY. The Contractor acknowledges that during the course of work performed for the Company, he/she will have access to proprietary and confidential information of the Company and its Customers. Proprietary and confidential information includes business and product information, and all non-public information concerning marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists, and other technical or business information. During and after Contractor's employment with the Company, the Contractor will not use or disclose, or allow anyone else to use or disclose, any proprietary or confidential information relating to the Company or its Customers, except as is necessary in the performance of work for the Company or as authorized in advance by the Company.

6. NON-SOLICITATION OF EMPLOYEES. The Contractor acknowledges the character of the Company's business and the substantial amount of time, money, and effort that the Company has spent and will spend in recruiting competent employees. The Contractor therefore agrees that he/she will not, during employment with the Company and during the Non-Solicitation Period defined below, solicit for employment, attempt to employ, or actively assist any other entity in employing or soliciting for employment any employee who is or who is hereafter employed or engaged by the Company or any successor of the Company, for an employer or business that competes with the Company. The Non-Solicitation Period shall be tolled while Contractor is in breach hereof. The Non-Solicitation Period shall be for a period of 1 (one) year following the termination of Contractor's employment with the Company, unless a court of competent jurisdiction determines that that Period is unenforceable under applicable law because it is too long, in which case the Non-Solicitation Period shall be for the longest of the following periods that the court determines is reasonable under the circumstances: 9 months, 6 months, or 3 months following the termination of Contractor's employment with the Company.

7. NON-SOLICITATION OF CUSTOMERS. The Contractor agrees that during the Customer Solicitation Period defined below, he/she will not solicit or cause to be solicited--for the purpose of selling products or services substantially similar to the products and services that the Company sells at the time of Contractor's termination, or actually provide any such services or products--any Customer with whom Contractor has had contact on behalf of the Company, or as a result of being employed by the Company, within the 12 months preceding termination of Contractor's employment with the Company. The Customer Solicitation Period shall be tolled while Contractor is in breach hereof. The Customer Solicitation Period shall be a period of 1 (one) year following the termination of Contractor's employment with the Company, unless a court of competent jurisdiction determines that that Period is unenforceable under applicable law because it is too long, in which case the Customer Solicitation Period shall be for the longest of the following periods that the court determines is reasonable under the circumstances: 11 months, 10 months, 9 months, 8 months, 7 months, 6 months, 5 months, 4 months, or 3 months following the termination of Contractor's employment with the Company.

1

8. NON COMPETE. The Contractor shall not solicit or contract with any Company Customer or otherwise agree to provide work or services to or for any Company Customer, except under the terms of this Agreement. This statement of non-compete will be in effect during the duration of this agreement, after the expiration or termination of this Agreement, and for 1 (one) year after the expiration or termination of this Agreement.

9. INTELLECTUAL PROPERTY/INNOVATIONS
   - DISCLOSURE. The Contractor agrees to disclose all inventions, improvements, and other innovations of any kind that he/she may make, conceive, develop, or implement/practice in the course of performing work for the Company or as a result of that work.
   - OWNERSHIP. The Contractor agrees that all intellectual property/innovations will be the sole and exclusive property of the Company, and assigns all his/her rights in the intellectual property/innovations to the Company. This assignment of ownership shall apply to all related patents, copyrights, mask work rights, trademarks, trade secrets, rights of priority, and other proprietary rights. Any and all intellectual property/innovations (including but not limited to software designs, programs, methodology, and documentation) obtained or developed by the Contractor in connection with any work/services performed for the Company or its Customers shall be the property of the Company. The Company shall have all property rights including but not limited to licenses, copyrights, patents, duplication, and distribution.
   - MORAL RIGHTS WAIVER. "Moral Rights" includes any rights of paternity, integrity, or authorship of intellectual property or innovation. The Contractor agrees to transfer and assign to the Company any and all moral rights that he/she may have in any intellectual property/innovation obtained, conceived, or developed by the Contractor in connection with any work/services performed for the Company or its Customers. The Contractor agrees to waive all moral rights he/she may have to any intellectual property/innovation during the term of the Agreement and forever afterward.

10. COMPENSATION. The Company agrees to pay the Contractor $3,462.00 bi-weekly, paid to the Contractor upon submission of hours/time worked for the Company and approved by a designated representative of the Company. Payment will be made per invoice (email or paper) submitted to the Company by the Contractor.

11. MISCELLANEOUS. Arizona law governs this Agreement.

Printed Name: Thomas Gallaway
Signature: [signature]

SYSTRENDS USA
Printed Name: David C. Darnell
Signature: [signature]

Date: 3/21/22

Date: 3/22/2022

2



# Systrends USA

## Code of Conduct

1. Office attire:
   - Systrends USA expects each employee/contractor to take pride and care in personal appearance, dress, grooming, and cleanliness. Items that display questionable taste are not to be worn at work.
   - Systrends USA office attire will be Business Casual, unless Customer-site requirements differ. In that case, Customer requirements for office attire shall be followed.
2. Deportment:
   - Courtesy must be used in all dealings with Systrends management, staff, contractors, and customers.
   - Unprofessional language (e.g., swearing, slang) must be avoided in all dealings with Systrends USA management, staff, contractors, and customers.
   - Unprofessional behavior (e.g., emotional outbursts, yelling) must be avoided in all dealings with Systrends USA management, staff, contractors, and customers.
3. Sexual harassment
   - Gender-specific behavior or comments must be avoided.
   - There should be no unwelcome or unwanted sexual advances
   - There shall not be verbal abuse or kidding which is sexually-oriented and is considered unacceptable by another individual.
   - Care must be taken to not create a work environment that is intimidating, hostile, or offensive because of unwelcome or unwanted sexually-oriented conversation, suggestions, requests, demands, physical contact, attention, or abusive language.
4. Substance abuse:
   - No alcoholic beverages on the premises (unless part of an organized party/event sponsored by Systrends USA).
   - No illegal drugs or controlled substances (unless a valid prescription authorized by a physician).
5. Smoking:
   - Systrends USA supports a smoke-free work environment.
   - No cigarette or cigar smoking in the Systrends USA office or within the office building.
   - Smoking breaks should be kept to a maximum of four per day.
6. Phone calls/personal business:
   - Personal phone calls conducted in the Systrends USA office should be limited to personal time (e.g., lunch breaks).
   - Personal long distance phone calls must not be made from the Systrends USA office, unless prior approval is obtained from Systrends USA management.
7. Internet/Email:
   - Internet research performed during working hours must be only for Company business.
   - All email should be for business purposes only.
   - All online research, input/output, work, messages, and/or transmissions over the Company network and any Customer network must be for Company/Customer business only. The Company reserves the right to electronically monitor transmissions for inappropriate (i.e., pornographic) and non-work-related material.

I, (print name then sign) _Thomas Gallaway_ [signature], on (date) March 21, 2022 support Phoenix Electronic Business Solutions, LLC/DBA Systrends USA Code of Conduct. I understand that infraction of any of the items detailed above, or other behavior the Company considers inappropriate, may result in discipline up to and including immediate termination of my employment and in revocation of my Contracting Agreement.



## Employment Agreement

1. PARTIES TO AGREEMENT. This Agreement is effective June 20, 2022, between Phoenix Electronic Business Solutions, L.L.C../DBA Systrends USA (herein, the "Company") and Thomas Gallaway (herein the "Employee"). In consideration of mutual promises contained herein and other good and valuable considerations it is agreed as follows.

2. DEFINITION OF "CUSTOMER." A "Customer" is defined as any person, persons, or entity made known to the Employee in the execution of this agreement, which has purchased from or engaged the Company to provide hardware, software, and/or consulting or contract services. This includes any person, persons, or entity, which has received a proposal, bid, or offer from the Company and has not rejected that proposal, bid, or offer.

3. TERM. The term of this Agreement commences on the first day that the Employee performs the duties described herein for the Company, and continues until either party terminates this agreement as provided herein.

4. TERMINATION OF AGREEMENT. The Company may terminate this Agreement, and the Employee's employment with the Company at any time, with or without cause, reason, or advance notice. Similarly, the Employee may terminate this Agreement with the Company at any time, with or without cause or reason, by giving at least one (1) week's advance written notice to the Company. This is known as employment "at will." This Agreement also may be terminated at any time by mutual agreement of the Company and the Employee. The Employee has been provided with a copy of the Company's Code of Conduct, and acknowledges that Employee's employment may be immediately terminated if Employee breaches the terms of the Code of Conduct.

5. NONDISCLOSURE/CONFIDENTIALITY. The Employee acknowledges that during the course of work performed for the Company, he/she will have access to proprietary and confidential information of the Company and its Customers. Proprietary and confidential information includes business and product information, and all non-public information concerning marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists, and other technical or business information. During and after Employee's employment with the Company, the Employee will not use or disclose, or allow anyone else to use or disclose, any proprietary or confidential information relating to the Company or its Customers, except as is necessary in the performance of work for the Company or as authorized in advance by the Company.

6. NON-SOLICITATION OF EMPLOYEES. The Employee acknowledges the character of the Company's business and the substantial amount of time, money, and effort that the Company has spent and will spend in recruiting competent employees. The Employee therefore agrees that he/she will not, during employment with the Company and during the Non-Solicitation Period defined below, solicit for employment, attempt to employ, or actively assist any other entity in employing or soliciting for employment any employee who is or who is hereafter employed or engaged by the Company or any successor of the Company, for an employer or business that competes with the Company. The Non-Solicitation Period shall be tolled while Employee is in breach hereof. The Non-Solicitation Period shall be for a period of 1 (one) year following the termination of Employee's employment with the Company, unless a court of competent jurisdiction determines that that Period is unenforceable under applicable law because it is too long, in which case the Non-Solicitation Period shall be for the longest of the following periods that the court determines is reasonable under the circumstances: 9 months, 6 months, or 3 months following the termination of Employee's employment with the Company.

7. NON-SOLICITATION OF CUSTOMERS. The Employee agrees that during the Customer Solicitation Period defined below, he/she will not solicit or cause to be solicited--for the purpose of selling products or services substantially similar to the products and services that the Company sells at the time of Employee's termination, or actually provide any such services or products--any Customer with whom Employee has had contact on behalf of the Company, or as a result of being employed by the Company, within the 12 months preceding termination of Employee's employment with the Company. The Customer Solicitation Period shall be tolled while Employee is in breach hereof. The Customer Solicitation Period shall be a period of 1 (one) year following the termination of Employee's employment with the Company, unless a court of competent jurisdiction determines that that Period is unenforceable under applicable law because it is too long, in which case the Customer Solicitation Period shall be for the longest of the following periods that the court determines is reasonable under the circumstances: 11 months, 10 months, 9 months, 8 months, 7 months, 6 months, 5 months, 4 months, or 3 months following the termination of Employee's employment with the Company.

1

8. NON COMPETE. The Employee shall not solicit or contract with any Company Customer or otherwise agree to provide work or services to or for any Company Customer, except under the terms of this Agreement. This statement of non-compete will be in effect during the duration of this agreement, after the expiration or termination of this Agreement, and for 1 (one) year after the expiration or termination of this Agreement.

9. INTELLECTUAL PROPERTY/INNOVATIONS
   - DISCLOSURE. The Employee agrees to disclose all inventions, improvements, and other innovations of any kind that he/she may make, conceive, develop, or implement/practice in the course of performing work for the Company or as a result of that work.
   - OWNERSHIP. The Employee agrees that all intellectual property/innovations will be the sole and exclusive property of the Company, and assigns all his/her rights in the intellectual property/innovations to the Company. This assignment of ownership shall apply to all related patents, copyrights, mask work rights, trademarks, trade secrets, rights of priority, and other proprietary rights. Any and all intellectual property/innovations (including but not limited to software designs, programs, methodology, and documentation) obtained or developed by the Employee in connection with any work/services performed for the Company or its Customers shall be the property of the Company. The Company shall have all property rights including but not limited to licenses, copyrights, patents, duplication, and distribution.
   - MORAL RIGHTS WAIVER. "Moral Rights" includes any rights of paternity, integrity, or authorship of intellectual property or innovation. The Employee agrees to transfer and assign to the Company any and all moral rights that he/she may have in any intellectual property/innovation obtained, conceived, or developed by the Employee in connection with any work/services performed for the Company or its Customers. The Employee agrees to waive all moral rights he/she may have to any intellectual property/innovation during the term of the Agreement and forever afterward.

10. JOB TITLE. This item of Agreement is specific to the position to be assumed by this Employee on behalf of the Company. The Employee understands that his/her position and duties may, and likely will, change over time.

11. COMPENSATION. Employee's compensation and benefits shall initially consist of the following, but these items are subject to review and change by the Company.
    a. A salary of $90,012 per year paid in biweekly increments ($3,462 x 26 pay periods per year), less applicable withholding (federal taxes, state taxes, FICA, etc.).
    b. Medical insurance as provided by the Systrends USA/ADP TotalSource 2014/2015 plan (the current benefit plan year began June 1, 2022 and ends May 31, 2023). Additional details regarding the medical insurance plan are provided in the benefit plan summary.
    d. Dental insurance as provided by the Systrends USA/ADP TotalSource 2014/2015 plan (the current benefit plan year began June 1, 2022 and ends May 31, 2023). Additional details regarding the dental insurance plan are provided in the benefit plan summary.
    e. Additional benefits/perquisites, as provided by the Company that may include additional benefits (Long Term Disability, Vision, Basic Life, 401K, and supplemental offerings through the Company via ADP TotalSource) and/or bonuses. All additional benefits/perquisites are dependent upon the discretion of the Company and upon prevailing economic conditions.
    f. Two weeks (10 workdays, based on an 8-hour day) of paid vacation per year to be accrued on a pro rata basis each pay period. The two weeks of vacation accrue for one calendar year, based on the Employee's original start date/anniversary date. Accrued vacation can be carried over until the second anniversary date. Upon termination, the Employee will be paid for any accrued vacation time, unless the Employee is terminated for cause (i.e., embezzlement, theft, dishonesty, or breach of the Code of Conduct.) or does not provide two weeks notice. If the Employee is terminated for cause or does not provide two weeks notice, he/she will not be paid for accrued vacation.
    g. One week (5 workdays, based on an 8-hour day) of sick/personal time per year to be accrued on a pro rata basis each pay period. Sick/personal time accrues based on the Employee's original start date/anniversary date. Sick/personal time cannot be carried over beyond an Employee's anniversary date into the next year. Unused sick/personal hours will be paid as a bonus after the Employee's anniversary date on an annual basis. If the Employee leaves the Company for any reason, there will be no compensation for unused sick/personal hours.
    h. Three days paid bereavement leave, for a death in the immediate family of the Employee or the spouse of the Employee.
    i. Holidays observed in 2012 will be Presidents' Day (floating holiday), Independence Day (Fourth of July), Labor Day, Memorial Day, Thanksgiving Day, the day after Thanksgiving Day, Christmas Eve, Christmas Day, New Years Eve, and New Years Day (2013).

2

12. MISCELLANEOUS. Arizona law governs this Agreement.

Employee Job Title: Director of Data Operations SYSTRENDS USA

Printed Name: Thomas Galloway

Signature:

Date: 6/20/22

Printed Name: David C. Darnell, LLC Manager

Signature:

Date: 6/20/22

3